## THORNBURGH v. HAND.

Every sale of property and personal chattels is good between the parties, and cannot be attacked for fraud, except by a creditor who has recovered judgment and taken out execution against the vendor, which has been returned unsatisfied, in whole or in part—with the single statutory exception of an attaching creditor, and his remedy being unknown to the common law, he must show affirmatively that his attachment has been properly issued, under the statute, before he can attack the sale.

For such a purpose, the writ of attachment, coupled with proof of the debt, is inadmissible in proof, without introducing the affidavit and other requisites to the issuing of the writ.

Where the vendee replevied the goods from the attaching creditor, and only established title by proving the possession of several months, it was competent for the defendant in replevin, on cross-examination of plaintiff's witness, to ask in whose possession the chattels were at a certain period anterior to the possession proved by plaintiff, in order to draw from him, if possible, the fact that plaintiff's possession was a fraud to hide the debtor's property.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

This was an action of replevin, to obtain possession of certain cattle and horses. The defendant justified having taken the property, under a writ of attachment issued out of the Sixth District Court, in an action brought by Samuel Norris against Burtis and Foster, and directed to the defendant as coroner of Yuba county; the sheriff, plaintiff in this action, being alleged to claim some interest in the property.

On the trial, the plaintiff, William B. Thornburgh, proved by Morgan D. Thornburgh that the witness had been in the employ of plaintiff, and in such capacity in charge of the stock for about three months preceding, and at the time of defendant's seizure.

On cross-examination, defendant's counsel asked the witness how long he had known the stock, to which he answered, "six or eight months." Defendant's counsel then asked him in whose possession the cattle were eight months ago, to which plaintiff's counsel excepted as not being legitimate cross-examination; which objection was sustained by the Court, holding that defendant must call the witness on his own behalf in order to put the question, defendant's counsel excepting to the ruling. The plaintiff proved no other title to the property; and having closed his case, the defendant offered in evidence the attachment in Norris v. Burtis and Foster, and note, offering at the same time to prove, by parol, the signatures to the note, that it was the debt in suit on which the attachment issued, and stating to the Court that they were the only papers in the suit of Norris v. Burtis and Foster, which he intended to introduce, to lay the foundation for impeaching the sale to plaintiff as fraudulent as against creditors, or for justifying the defendant.

The plaintiff's counsel objected to the introduction of the attachment without the other papers in that suit, and particularly the affidavit on which the attachment issued. The Court sustained the objection, and ruled out the evidence, unless the other papers were introduced—the defendant excepting.

The jury found a verdict for plaintiff, and judgment was entered accordingly. Motion for new trial was made, and over-ruled, and defendant appealed.

This case was decided in January Term, and comes before the Court, at this time, on a re-hearing.

*Robinson, Beatty & Botts*, for Appellant.

The first error assigned is, the Court below refused to allow defendant (appellant) to cross-examine the witness, Morgan D. Thornburg, as to who had possession of the cattle in dispute, when witness first knew said cattle. Witness had certified, on the examination-in-chief, that W. Woods and himself had the cattle, etc., in dispute, in their charge and possession, holding the same for plaintiff, when the levy was made.

To show the relevancy of this cross-examination, we must draw a distinction which seems to have been overlooked by opposing counsel. If any officer, under process against A, seizes the goods of A, the process if regular on its face, is justification; because he was ordered by competent authority to make the seizure. "A sheriff or other ministerial officer, shall be justified in the execution of a process and orders, regular on their face, and issued by competent authority, whatever may be the defect of the proceedings under which they were issued." § 48, p. 719, Comp. Laws.

If, however, under such process he seizes the goods of B, he has no justification, because he has no more authority to seize

the goods of B, under process against A, than he has to seize A's goods without any process at all. If, however, the goods thus seized as A's, are claimed by B under a sale from A, which is fraudulent as to creditors, and B brings his suit for the goods, then the process is, or is not a justification, dependent entirely upon the fact, whether the plaintiff in the process is, or is not a creditor. If he be a creditor, the officer is justified. If he is not a creditor, then the officer is a trespasser. The sale between A and B, and as to all the world except creditors, is good, and the goods belong to B. But as to creditors, the sale being void, the goods are the property of A. If the seizure is made under an execution, then the judgment is produced to show that the plaintiff in the execution, whom the officer represents, is a creditor, and consequently belongs to the class as to whom the sale is void. The object of offering the judgment is, therefore, simply to give the officer, as the representative of a creditor, a *status* to attack the sale of A to B, as fraudulent, as to the plaintiff in the process under which it was made. "Ever since the case of Savacoal *v.* Boughton, (5 Wendell, 170,) a ministerial officer is protected in the execution of a process regular on its face, and coming from a Court, or body of men having jurisdiction of the subject-matter. Where an officer, who has seized property by virtue of an execution, is sued by the defendant in the execution, for taking the property, the officer is never compelled to produce the judgment to justify the taking. The execution, alone, protects him.

But if the officer is sued by A, for taking his property, under color of an execution against B, the question to be tried is, whether the property, when taken, belonged to A or B? If it belonged to A, the execution, with or without the judgment, is no protection; for it does not command the officer to take A's property. But if A claims title to the property, by virtue of a sale from B to him, which is alleged to be fraudulent against B's judgment-creditors, then it becomes necessary for the officer to produce the judgment on which the execution issued against B. But this is for the purpose of proving, in connection with other testimony, that the pretended sale from B to A was fraudulent and void, and that the property, therefore, still belongs to B, and not to A. The judgment, in such case, is given in evidence, because it affects the title to the property in question, and not because it is for any other purpose necessary to protect the officer. Sheldon *v.* Van Burkirk, 2 Comstock, 477, 478. See, also, Parker *v.* Walrod, 16 Wend., 518, 519.

See, also, Kirksey *v.* Duboce, 19 Alabama, 51: "If the attachments were regular on their face, and authorized a levy upon, and seizure of, the defendant's property, the sheriff is not bound to go beyond them, and show bonds and affidavits, or that there was a subsisting debt, on which they might properly issue."

· Thus, it seems that it is not for the protection of the officer, but because it affects the title, that the judgment for indebtedness is introduced. Thus, if the plaintiff in the process is a creditor, then the property is A's, and the officer is protected. If the plaintiff is not a creditor, then it is the property of B, and the officer is not protected, and that question does materially affect the title.

If the distinctions we have just taken, and the reasons assigned by the authors and Judges from whom we have quoted, for the introduction of the judgment, are correct, then it appears to us that the proposed cross-examination was eminently proper. The plaintiff had never shown a sale to himself, from the defendant in attachment. Therefore the question, as yet, whether the officer represented a party qualified to attack such a sale, had never arisen. The plaintiff showed a *prima facie* title in the property in dispute, in himself, by the weakest of all testimony, mere possession, unconnected with any derivation of title. On cross-examination, we desired to show that his possession was the possession of defendant in attachment. If we could have shown, on cross-examination, that plaintiff held the property seized, avowedly as the property of defendant in attachment, and without any claim to the same, except as mere naked bailee for the defendants in attachment, or either of them, why was it not legitimate cross-examination?

But we go further, and say, even if there was a bill of sale from Burtis & Foster, or either of them, to Thornburgh, that sale, or rather pretended sale, might have been under such circumstances as would have entitled us to go into the proof in regard to it, without producing anything but the attachment.

The rule is, that if a sale is made which is *bona fide* as to the parties thereto, or in other words, is intended as between themselves to be a sale, then it cannot be attacked, until the officer shows himself to be representing a creditor, entitled to attack the same. But not so when there is a mere *colorable* sale, where the parties themselves do not intend or expect it to be a sale, but the vendor still retains his control over the goods, the pretended vendee merely acting as his agent, as between themselves, but representing himself as the owner to other persons, for the purpose of securing the goods from vendor's creditors. 2 Starkie on Evidence, 1354. Also, 5 Burrows, 2631, on the same point.

That the Court erred in refusing to suffer defendant to introduce the attachment, the note sued on, (with the parol evidence that it was the note which was the foundation of the action and attachment,) and evidence of the signature, etc.

If the views taken by the Court, in the cases quoted in the former part of this brief, from 2 Comstock, and 16 Wendell, be correct, then there would be no possible reason for introducing

the affidavit. The *attachment*, if regular on its face, was protection to the officer for seizing the property of Burtis & Foster, or either of them. It would not have protected the officer in seizing the property of Thornburgh, if it had been supported by a hundred affidavits. Whether there was or not an affidavit and bond, regularly made and filed before the attachment issued, it could not one way or the other affect the question, as to whether the cattle seized were the cattle of Thornburgh or of Burtis & Foster.

The question of whether Burtis & Foster were in debt to Samuel Norris, might, however, have affected that issue. If they, or either of them, had sold the cattle to Thornburgh, under such circumstances as to make a good sale, as between the parties, but void as to prior creditors, then the indebtedness might be an all-important fact. That the attachment alone, without the affidavit, was justification for seizing the property of Burtis & Foster, if the same was regular on its face, we refer to the following authorities: 2 Comstock, 477, 478; 16 Wend., 518, 519; 19 Alabama, 51; Damon *v.* Bryant, 2 Pick., 411; and last, but not least, the express provision of our statute. See Compiled Laws, p. 719, § 48.

Respondent complains that our plea of justification is not a good one.

To this we think we have three very satisfactory answers to make.

First, We think the defence is well pleaded. In substance, the answer clearly shows the intention of the officer to rely for protection on the attachment. That, we suppose, under our system, sufficient. See section seventy of Practice Act.

Second, If the answer was not a good plea of justification, the plaintiff should have demurred. See Practice Act, § 38.

Third, If the plea were insufficient, and the plaintiff did not demur, he should at least, on our offering to introduce the attachment in the Court below, have raised the objection to the sufficiency of the plea. Had that been done, and the Court believed the objection to the plea good, certainly that Court, in a sound discretion, could and would have allowed an amendment, especially, as it was at best but an amendment in form. See Practice Act, § 68; Aquital *v.* Crowell, 1 Cal., 191; Cook *v.* Spears, 2 Cal., 409.

Lastly, Even if we are wrong in our premises, we have been misled in matters of practice, by the rulings of the Supreme Court of the State. In our first position, we brought ourselves within the ruling of this Court, in the case of Chenery *v.* Palmer. On the second point, we have the ruling of this Court in the case of Swan & Blanch *v.* Buel, that the attachment alone is justification. No debt, no affidavit, and no bond need be shown.

This case, too, is supported by the case in 19 Alabama, above referred to.

*Stephen J. Field* for Respondent.

The ruling of the Court below, in refusing to permit the defendant to examine the witness as to the possession of the property six or eight months before its seizure, was correct:

1. Because it would not have been legitimate cross-examination.

2. Not being legitimate cross-examination, no reason was given to the Court below for a deviation from the general rule in this particular instance.

3. Because such examination was improper, until the defendant had laid some foundation for questioning the possession of the plaintiff, and could therefore be had only when the witness should be called, on his behalf, to support some alleged ground of defence properly pleaded and presented. 1 Greenleaf Ev., § 445; Floyd *v.* Bovard, 6 Watts & Serg., 1, 75; The Philadelphia and Trenton Railroad Company *v.* Stimpson, 14 Peters, 449; Van Etten *v.* Hurst & Cushing, 6 Hill, 311; Noble & Eastman *v.* Holmes, 5 Hill, 195.

The ruling of the Court below, that the writ of attachment, note, and parol proof offered, were insufficient as a foundation for impeaching the sale of the property from Burtis to the plaintiff, as fraudulent as against creditors, or justifying the defendant, was correct.

It is to be observed that the defendant assumes, in his offering the writ, note, and parol proof, that there had been a sale of the property in controversy from Burtis to Thornburgh, which he was going to attack as fraudulent, although, at the time, there had been no evidence in the case of such sale.

1. Now, it is well established that a sale by a debtor of his property, even if void as against creditors, is good as between himself and his vendees, and all·the world, except his creditors; that such sale cannot be attached by a creditor at large; it must be by a creditor having a judgment and execution, or some process regularly issued authorizing a seizure of the property.

It is equally well established that an officer, in order to justify the seizure of property in the possession of a stranger to the writ, must plead specially such justification. He must plead all those facts which are necessary to support the writ. The defence of justification is very special, and must be pleaded. Demick *v.* Chapman, 11 Johns., 131; 1 Saund. R., note to case of Greene *v.* Jones, p. 298, and authorities there cited; Van Etten *v.* Hurst & Cushing, 6 Hill, 311; Noble & Eastman *v.* Holmes, 5 Hill, 195.

2. The issuing of an attachment under the statute of this State is a mere ministerial act of the clerk. It is issued as a matter of course, by the clerk, upon an *ex parte* application of the plaintiff,

without the intervention of any Court or Judge, upon an affidavit being filed in a suit commenced, showing the existence of a debt arising upon a contract for the direct payment of money, and that it has not been secured by any mortgage upon real or personal property. The clerk is not invested with any discretion in the matter. He cannot withhold the writ, or qualify it. If issued in a case provided by statute, it is valid; but if not, it is void. He who justifies under such process, must show affirmatively that it was issued regularly. There can be no intendment of law in favor of its regularity. Crawford *v.* Clute & Mead, 7 Ala., 157.

3. Proceedings by attachment are unknown to the common law. They derive all their force and validity from the statute. Such statutes are always construed strictly. Souter *v.* The Sea Witch, 1 Cal. R., 163; Griswold *v.* Sharpe, 2 ib., 17; Clynor *v.* Willis, 3 ib., 363.

4. No presumptions of law are made in favor of the regularity of proceedings of Courts, or officers of special or limited jurisdiction, or of proceedings unknown or contrary to the common law, even when taken by Courts of general jurisdiction. Those parts of the statute which are essential to jurisdiction, must be shown to have been strictly pursued, or the proceedings will be held to be a nullity. Thatcher *v.* Powell, 6 Wheaton, 119; Denning *v.* Corwin, 11 Wend., 651; Earthman *v.* Jones, 2 Yerger, 493; Holmes *v.* Broughton, 10 Wend., 75; Mills *v.* Martin, 19 Johns., 34; Hall *v.* Howe, 10 Conn., 520; Starr *v.* Scott, 8 ib., 480.

5. To justify, in the present case, the defendant should have alleged in his plea, and been ready to prove on the trial, all the facts which are necessary to authorize the issuance of the writ under our statute.

A defendant justifying under such writ, to quote the language of Judge Bronson, "must show the attachment regularly issued."

By process regularly issued, is meant "process lawfully issued by a Court or magistrate having competent jurisdiction." 2 Bouvier's Law Dic., under words, "Regular and Irregular Process."

When we say that process was regularly issued, we refer to the authority under which it was issued, not to the form of the process itself. When we refer to the form of the process, we say that it is regular, or irregular, on its face. Noble *v.* Holmes & Eastman, 5 Hill, 195; Van Etten *v.* Hurst & Cushing, 6 Hill, 313; Doane *v.* Eddy, 16 Wend., 524; Jenner *v.* Joliffe, 6 Johns., 11; High *v.* Wilson, 2 Johns., 47; Simpson *v.* Watrous, 3 Hill, 619; Jansen *v.* Acker, 23 Wend., 480; Homan *v.* Brinckerhoff, 1 Denio, 184; Bennett *v.* Brown, 1 Code Rep., N. S., 269; Adkins *v.* Brewer, 3 Cowen, 206; Loder *v.* Phelps, 13 Wend., 46.

At the January Term, Murray, C. J., delivered the opinion of the Court—Terry, J., concurring.

This was an action of replevin. The defendant justified the taking under a writ of attachment.

Two errors are assigned by the appellant; First, the refusal of the Court to permit the defendant to ask a witness, on his cross-examination, " in whose possession the property was some six months before the seizure thereof by the defendant;" and second, in refusing to admit the writ of attachment and note, with parol proof that it was the same indebtedness on which the suit was brought, out of which the attachment issued, as a sufficient predicate on which to attach the sale of the plaintiff.

Upon the first point there can be no doubt of the correctness of the ruling of the Court below; a witness cannot be cross-examined, except in reference to matters concerning which he has been examined in chief.

The questions asked of the witness, were with regard to the possession of the property at the time it was taken by the defendant, and an examination of the fact of possession six months before, was in no way responsive to the direct examination. Even if the rule were different, the question was improper until the defendant had first laid the foundation for impeaching the sale.

The plaintiff contends that the object of the question was to establish the fact, that the plaintiff was acting as the agent of Burtis, who, it is alleged, was the owner in fact of the property. Whatever may have been the purpose of the question, the object was not stated to the Cout, and in the absence of an explanation on the subject, the object was properly excluded. The defendant was not injured by this ruling; for if it was necessary to establish this fact in defence, he might have recalled witness at a subsequent stage of the proceedings.

The second point is not without difficulty, and is important as a rule of practice.

It is well settled that a creditor at large cannot impeach a sale of property by his debtor to a third person, until he has obtained judgment, taken out execution, and the same has been returned unsatisfied; or unless he claim by virtue of some writ or process giving him a specific lien thereon; for as between the parties the sale is valid. An officer who seizes property in the hands of the debtor, may justify under the execution or process, but when he takes property from a third person who claims to be the owner thereof, if on execution, he must show the judgment and execution; if on attachment, the writ of attachment, and, as we think, the proceedings on which it was based.

It is contended by the appellant that it is only necessary to show the indebtedness and the writ; that this is sufficient evidence to establish the right of the officer on behalf of the credi-

tor, or the relation of the creditor, so as to enable him to attach the sale. In support of this proposition, the case of Damon *v.* Bryant (3 Pick., 412), is relied on. That was an action of trespass for taking goods "from the possession of a third party." On the trial, the officer justified under a writ of attachment, but introduced no evidence of a debt or judgment, which it was insisted was necessary. The judgment was reversed on this ground, the Court remarking generally, that a "judgment must be shown, where the officer justifies under an execution, or a debt, if under attachment."

It may be that the proof of indebtedness, together with the writ, would be sufficient under the laws and practice of Massachusetts, particularly if the suggestion of the counsel for the respondent be correct, that, in that State, the attachment issues as a matter of course on bringing suit, but we are far from being warranted in inferring, from the general words of the opinion just quoted, that the writ and mere parol evidence would be sufficient. There being no debt shown at all, it was unnecessary for the Court to say what strictness should be required in establishing that fact. Admitting, however, that the opinion goes the length contended for, then we maintain that it is not correct.

There is no reason, if in case of a seizure under execution, a judgment must be shown, which is the basis of the execution and *prima facie* establishes the debt and regularity of all the proceedings from the filing of the declaration, and which is, in its nature, the highest legal evidence of the right to issue process, why, in a case of the seizure of property by attachment, the same strictness should not be required.

The fact that a party is indebted to another is not sufficient of itself to warrant the issuing of an attachment. The party is required to make affidavit that the debt sued on arises out of a contract for the direct payment of money, made or payable in this State, and is not secured by mortgage on real or personal property; this affidavit must be made in a suit pending, and be accompanied with a bond, and the suit, affidavit, and bond, are a necessary predicate for the writ, and in our opinion, should be shown in evidence the same as a judgment.

This, we think, follows as a legitimate conclusion, from the fact that the act of issuing an attachment is merely ministerial, and there is no intendment in favor of the regularity of the process; for aught we may know, there never may have been any suit commenced, bond given, or affidavit filed, and yet, the production of a writ, improvidently issued, and proof of a debt due the attaching creditor, would, it is contended, be sufficient to cure all these defects.

We have not been able to find many authorities which go directly to this point, yet, so far as we have examined, we are satisfied that our position is correct.

Thornburgh v. Hand.

In Noble & Eastman v. Holmes, (5 Hill, 195,) which was an action of replevin for a yoke of oxen, tried in the Circuit Court of New York, the defendant justified the seizure of the cattle by an attachment issued to him by a justice of the peace against one Lattin. The plaintiff claimed title by purchase from Lattin previous to the issuing of the attachment. A question was made whether the purchase by the plaintiff was not fraudulent as to Lattin's creditors. The plaintiff insisted that the defendant must show the necessary proceedings to give the justice jurisdiction to issue the attachment. The Judge overruled the objection, and decided that the process being regular on its face, was a protection to the defendant. A verdict was had for the defendant, and the plaintiffs applied to the Supreme Court for a new trial. In giving the opinion of the Court, Judge Bronson uses this language:

"Under the ruling of the Judge, the jury may have found a verdict for the defendant, although they believed that the plaintiffs had a good title to the oxen, as against Lattin. If they believed that fact, the defendant had no right to take the property from the plaintiffs by virtue of the attachment against Lattin, without showing that the sale to the plaintiffs was void as against creditors. The sale could not be impeached by a creditor at large; it must be a creditor having a judgment and execution, or some other process which authorized a seizure of the goods. As a general rule, process regular on its face is sufficient for the protection of the officer, although it may have been issued without authority. But when the officer attempts to overthrow a sale by the debtor, on the ground of fraud, he must go back of his process, and show authority for issuing it. If he act under an execution, he must show a judgment; and if he seizes under an attachment, he must show the attachment regularly issued. If Lattin had sued, it would be enough for the defendant to produce the attachment; but it is otherwise as against the plaintiffs, who are strangers to the attachment, and claim under an older, and therefore better title, unless it can be impeached by fraud."

It may be contended that this decision turned upon the fact that the writ was issued by a Court of inferior and limited jurisdiction, and therefore there was no intendment in favor of the regularity of its proceedings. This fact does not appear to have entered into the consideration of the Court, and the inference is rebutted by the remarks of the Court, that "if Lattin had sued, it would be enough for the defendant to produce the attachment," which would have been improper; for an intendment of the regularity of the proceedings of an inferior Court would be no stronger against the debtors than a third party.

"In Crawford v. Clute & Mead, 7 Alabama Rep., 157, the plaintiff sued in *assumpsit* the endorsers of a note, the defendants

pleaded a writ of garnishment, issued from the Circuit Court of the United States, upon a judgment recovered therein, by which the debt on the note was placed in the custody of the law; to the plea, a demurrer was interposed; the demurrer being overruled, the general issue was pleaded, a trial had, and judgment for plaintiff. On appeal, the question was as to the sufficiency of the plea, and the Court, in giving its opinion, says :

" The plea in this case is bad, because it does not show that the Circuit Court of the United States had jurisdiction to issue the garnishment. Waiving all consideration of the question, that it is not averred in the plea that the Circuit Court had jurisdiction to render judgment against David Jones, the assignor of the plaintiffs, and also, whether the Courts of the United States can issue process of garnishment upon their judgments, to give the Court jurisdiction, it should have been averred in the plea that the affidavit was made, which is the authority for issuing the process under the statute of this State. (Clay's Dig., 259, §§ 1, 2.) A judgment-creditor has not the right, as a consequence of his judgment, to sue out garnishee. process, but to entitle him to it, must make the affidavit which the statute requires.

" The necessity of this averment is more apparent when we consider that the process is not issued by a judicial officer, but *ex parte*, by the clerk of the Court, on the application of the plaintiff, and if any intendment in favor of the regularity of the proceedings could be indulged in, which we have seen is not allowed in such a plea as this, it could not be made in favor of a mere ministerial act such as this is. It was, therefore, necessary that the plea should have contained an averment that the proper affidavit was made, without which, the Court had no jurisdiction."

It is contended, that this case does not fall within the rule laid down in Crawford *v.* Clute & Mead, because it appears that the writ was directed to the coroner of Yuba county, by an order of the Judge of the Sixth Judicial District, based upon the affidavit of the plaintiff, that the sheriff was interested in the property to be attached. We are not aware of a provision of our statute which requires such an order.

In our opinion, the writ might have been directed to the coroner by the order of the plaintiff, and, if it had been sent to the sheriff, it would have been his duty, if interested in the subject, to have transferred it to the coroner. If, however, the District Court had any authority, upon a suggestion, to make the order, it only goes to the direction of the writ, and not to the propriety of issuing it. Cases might doubtless be found maintaining the same position, but we are satisfied, upon the authority of those cited, that our conclusion is correct.

Judgment affirmed.

Thornburgh *v.* Hand.

On the re-hearing, at this Term, MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., and TERRY, J., concurring.

In our former opinion in this case, we consider two propositions: First, as to the refusal of the Court to allow the defendants' counsel to cross-examine the witness Thornburgh; and second, whether the officer was required to establish anything more than the debt and writ of attachment, to enable him to attack the sale from Burtis and Foster to the plaintiff, on the ground of fraud. On the second point, we still adhere to our opinion, and notwithstanding the able argument of counsel, and the authorities adduced, we see no good reason for doubting its correctness.

It will hardly be expected that we should again go into a review of all the arguments that might be adduced for or against the proposition.

It may be stated, *in limine*, that every sale of property and personal chattels is good as between the parties, and cannot be attacked for fraud, except by a creditor, who has obtained judgment, and taken out execution, which has been returned unsatisfied in whole or part. To this general rule there is one exception, and that is in cases where the statute gives a lien upon a seizure by attachment. In the latter case, as the proceeding is of statutory origin, and unknown to common law, it is evident that all the provisions of the act must be strictly complied with. It is a harsh remedy at best, and a party who seeks to enfore it against another, should be held to a strict accountability and compliance with the law.

The appellant contends, that where the officer seizes property in the hands of a third party, which is alleged to have been fraudulently transferred, it is only necessary to show the writ and prove the debt, thereby establishing the relation of creditor, and that when this relation is established, then the sale may be attacked for fraud.

It requires something more than a mere indebtedness between the parties to justify the taking of property from the possession of a third person. A mere creditor cannot, as before remarked, impeach the sale until he shows that he has a judgment or lien; neither can the officer who represents him do so. The debt, of itself, gives no right to seize the property, but the attachment, and it is essential for its validity that it should have been issued in conformity with the law. If the officer seizes the property of the debtor, and the writ be regular on its face, it is a sufficient justification to him; for the defendant may, if the attachment has been improvidently issued, move to have it quashed, or bring a suit upon the undertaking, but a third party, a stranger to the record, could not interfere, and, therefore, it would seem but justice, that before any right could be established against him, by reason of a proceeding to which he was not a party, that its regularity should be shown.

If the officer seizes the goods of the judgment-debtor under a *fi. fa.*, as against the debtor, it is only necessary to show the writ; but as against a third party, it would be necessary to show both the judgment and execution, and the reason of the rule is said to be, because the party against whom the judgment was rendered might have applied to set it aside, or have reversed it on appeal if it was erroneous, but having acquiesced in it, it is presumed to be correct; while on the other hand, no such intendment would be indulged in, against one who was neither a party or privy thereto.

The counsel for the appellants have been unable to find a single authority that militates against our former opinion, except the case of Kirksey's Trustees, etc., *v.* Dubose, 19 Alabama, 50, in which the following loose *dictum* of the Judge who delivered the opinion of the Court appears: "If the attachments were regular on their face, and authorized a levy and seizure of the defendants' property, the sheriff is not bound to go beyond them and show bonds and affidavits, or that there was a subsisting *debt* on which they might properly issue." Governor *v.* Gibson, 14 Ala.

In the first place, this expression of opinion was not neccessary to a decision of the case, and in the second, if necessary, it was erroneous, being in direct conflict with the former decisions of the same Court, and of every authority cited by the appellant, and lastly, it is not supported by any reasoning of the Court, or by the case of Governor *v.* Gibson, which it cites, and which simply holds that "it is a good defence for the sheriff, when sued by the plaintiff, in the proceeding for not making goods available, to satisfy process under which they were seized, to show that they were taken from his possession under a writ regularly issued."

There is nothing in either of these cases to shake the decision of Crawford & Clute *v.* Mead, 7 Ala.

The counsel for the appellant relies on the case of Swan & Blanch *v.* Bull, decided some three years ago by this Court. This case, by some accident, has never been reported, and has been unknown to the bench and bar, so that it cannot be claimed with propriety that he was misled by it; in fact, on the former argument no allusion was made to it whatever. On examination of the record in that case, I find that the opinion of the Court, though apparently in the teeth of all the authorities, is sustained by the case made.

The plaintiff did not succeed in establishing a right *prima facie* to the property. The sale by which they claim title was only colorable, or in fact, it was shown by their own witnesses, that it was fraudulent, and that they were bailees of the defendant in execution. Under these circumstances it was not necessary to show a debt. The rule is, that if a sale is made which was

Thornburgh v. Hand.

intended to be good between the parties, it cannot be attacked until the officer shows that he is entitled to represent a creditor; but if the sale is merely colorable, and it appears from the testimony that it never was the intention of the parties to pass the title, that the plaintiff is but the agent or bailee of the defendant in attachment, then the writ would be a sufficient justification for the officer, as it is evident that an agent, by reason of a colorable or fraudulent sale, would be in no better condition than his principal.

The rule is thus laid down by Starkie, in his work on evidence, "If the assignment and delivery of possession were merely colorable, and the property still remained in the debtor, against whose goods the execution issued, the sheriff, it seems, would be entitled to a verdict without proof of the judgment, the plaintiff having no property in the goods." It was doubtless on this view of the law that this Court based its former opinion, and we are prepared to maintain its correctness. This rule brings us to the examination of the first assignment of error, viz., the refusal of the Court to permit the defendant to ask the witness, in whose possession the property was some six months before the seizure.

The plaintiff had established title by possession, but had not introduced any bill of sale or evidence tending to establish a sale. This evidence was the weakest that could be produced to establish title. Having, however, shown possession, we think it was competent under any rule of evidence, to cross-examine the witness for the purpose of establishing the nature and character of the plaintiff's possession; to draw from him, if possible, the fact whether such possession was a mere cover to hide the defendant's property, and also, for the purpose of testing the witness' means of knowledge and information on this subject.

It is true, that in our former opinion we thought that the question was improper, but our minds were not directed to the distinction between *bona fide* and colorable sales. Since that time our attention has been called to the case of Chenery *v.* Palmer, 5 Cal., (which was not then reported, and which had escaped our recollection,) where this same point was decided. We are unable to see any difference between the two cases, and must follow the rule there laid down.

Judgment reversed, and cause remanded.