I. OBERFELDER & CO., PLAINTIFFS IN ERROR, V. D. C. KAVANAUGH, DEFENDANT IN ERROR.

1. **Conversion:** EVIDENCE ✱ OWNERSHIP OF PROPERTY. In an action against a sheriff for taking and carrying away a stock of millinery goods and notions, the point in dispute being whether the goods were the property of B. F. S., or of his wife, Mrs. B. F. S., it having been proved that both of them had up to a certain point of time, under some authority and in some capacity, exercised control over the said stock of goods and the store in which the same was kept, *Held*, Competent on the part of the defendant, who claimed under Mr. B. F. S., to prove any fact connected with the business of the Stumps, which from its nature must have been known to Mrs. S., inconsistent with her claim of ownership.

| 21 | 483 |
| 22 | 216 |
| 21 | 483 |
| 25 | 730 |
| 21 | 483 |
| 29 | 429 |
| 21 | 483 |
| 31 | 307 |
| 32 | 342 |
| 21 | 483 |
| 36 | 44 |
| 37 | 648 |
| 21 | 483 |
| 40 | 25 |
| 21 | 483 |
| 53 | 526 |

2. ———: ———: ———. The fact that goods purchased for said business at different times, extending over a period of four or five years, and amounting to several thousand dollars, had been shipped to B. F. S., and all correspondence in relation to such goods and purchases had been carried on between the wholesale merchant selling such goods and B. F. S., and in his name, *Held*, To afford some evidence, however slight, that B. F. S. was acting in the capacity of owner rather than that of clerk, agent, or manager.

3. **Trial**: EXAMINATION OF WITNESS. A trial court will always allow a witness to explain an error, mistake, or oversight in his testimony when he requests to do so before leaving the stand. At what point of time is a matter of discretion with the court.

4. **Evidence**: PROOF OF LEASE. Where a lease purporting to have been executed by and between strangers and a party to the suit is offered in evidence, and its execution is not admitted by the opposite party, such execution must be proved. Where such lease purports to be signed by a subscribing witness, proof of such signature being the genuine handwriting of the witness is sufficient.

5. **Witnesses**: CROSS-EXAMINATION. A witness for defendant being under cross-examination, plaintiff's counsel asked him whether he had not at a certain time and place—naming them—offered certain inducements of a pecuniary nature—specifying the same—to Mrs. B. F. S., if she would " come up and testify in the county court'' (the said Mrs. S. having afterwards given her deposition on the part of the plaintiff). Defendant's objection to such question, *Held*, Properly sustained.

6. **Conversion**: EVIDENCE. When an officer attaches property found in the possession of a stranger claiming title, in an action for such taking, the officer, in order to justify it, must not only prove that the attachment defendant was indebted to the attachment plaintiff, but that the attachment was regularly issued.

ERROR to the district court for Platte county. Tried below before POST, J.

*McAllister Brothers*, for plaintiff in error.

*John M. McFarland*, for defendant in error.

COBB, J.

The defendant in error, who was also defendant in the court below, is the sheriff of Platte county.  On or about the 7th day of December, 1884, he had in his hands two certain orders of attachment, issued out of the county court of said county against one B. F. Stump, one in favor of Lederer, Strause & Co. for the sum of $970.86, the other in favor of Roll, Thayer, Williams & Co. for the sum of $247.88.  These orders of attachment he levied upon a certain stock of millinery goods, notions, and store fixtures then in a certain storehouse in the city of Columbus, and took and carried the same away.

The plaintiffs were in the possession of the stock of goods at the time of the levy and taking, by virtue of a chattel mortgage thereof, executed to them by Mrs. B. F. Stump, dated and duly recorded on the 8th day of December, 1884.

The action was brought for the value of the property taken, alleged in the petition to be $2,091.87.  The defendant admitted the taking, justifying the same under and by virtue of the two orders of attachment above referred to, and alleging said property to be of the value of $1,142.63, and no more.

There was a trial to a jury, which found for the defendant.  The plaintiff's motion for a new trial having been overruled a judgment was rendered for the defendant, and plaintiffs bring the cause to this court on error.

The following are the errors assigned:

"1. The court erred in allowing the witness, Charles McDonald, to answer questions 5 and 6 on page 8 of the bill of exceptions.

"2. The court erred in allowing the witness, Charles McDonald, to answer questions on page 9 of the bill of exceptions.

"3. The court erred in admitting exhibit 'D' in evidence.

"4. The court erred in not allowing the witness, D. N. Meyers, to answer the last question put to him on page 24 of the bill of exceptions.

" 5.    The court erred in overruling plaintiffs' motion for a new trial on the ground that the verdict was against the evidence and contrary to law.

" 6.    The court erred in overruling the plaintiffs' motion for a new trial generally.

" 7.    The court erred in entering judgment against the plaintiffs and in favor of the defendant. "

The plaintiffs proved their cause of action *prima facie.* Of this there can be no doubt.    The plaintiffs' agent testified to the ownership and possession of the goods by Mrs. B. F. Stump at the time of the execution of the note and mortgage to the plaintiffs.    The note and mortgage were introduced and received in evidence; that after the execution and delivery of the mortgage, Mrs. Stump delivered the keys and possession of the store to the witness as agent of the plaintiffs, and that the store and goods were in such possession when the goods were levied on by the defendant.    The balance of plaintiffs' evidence, up to their first rest, was confined to the question of the value of the goods taken by the defendant.

The defendant then called Charles McDonald, who testified that he was acquainted with B. F. Stump and Mrs. B. F. Stump ; had known them for about four years; had been dealing with them during that time; had sold them goods from four to six times per year, amounting in all to several thousand dollars.    The following question was then put to witness by counsel for defendant :

Q.    I will ask you to whom you always shipped and billed the goods, in dealing with them?
The question was admitted over the objection of plaintiffs as immaterial and incompetent, and answered.

A.    To B. F. Stump.

Again the following :

Q. With whom was the correspondence in regard to the business transactions with the firm of B. F. Stump carried on?

Over the same objection admitted, and witness answered, "With B. F. Stump"

I cannot say that these questions, or the answers thereby elicited, were either immaterial or incompetent, although I think they were very near the line. The question at issue before the court and jury was, as to the ownership of the attached property. It was, and is, an undisputed fact, that such property had constituted the stock and fixtures of the store and business in which both Mrs. Stump—under whom plaintiffs claimed—and Mr. B. F. Stump—under whom defendant claimed—had, up to a certain point of time, under some authority, and in some capacity, exercised control. Upon the plaintiffs' theory, Mrs. Stump was the owner of the goods, fixtures, and business, and B. F. Stump was her agent, clerk and manager; while upon the defendants' theory, B. F. Stump was the owner, and Mrs. Stump employed by him as a trimmer. Either of these theories, proved to be the true one, would be conclusive. After the departure of B. F. Stump, if never before, Mrs. Stump had exercised in her own right, real or assumed, exclusive ownership and control of the property, and in her deposition, then on the files of the court, had sworn to such ownership. It was then competent on the part of the defendant to prove any fact connected with the business, and which, from its nature, must have been known to Mrs. Stump, inconsistent with her ownership. The fact that goods purchased for said business at different times, extending over a period of four or five years, and amounting to several thousand dollars, had been shipped to the house in the name of B. F. Stump, and that all correspondence in relation to such goods and purchases had been carried on between him and the wholesale merchant selling them, afforded some evidence—proba-

bly slight under the circumstances of this case—that he was the owner rather than acting in the capacity of clerk, agent, or manager; and it was certainly material to the case, that defendant prove such fact if he could. The latter question was objectionable, in that it assumed that there was such a *firm* as B. F. Stump, but it was not objected to on that account.

Upon cross-examination the witness identified two papers as being in his own handwriting; one as part in his and part in the handwriting of Miss McCartney, a clerk in his employ, and one as being wholly in the handwriting of Miss McCartney, and as relating to a matter within the line of her duty.

Upon redirect examination, counsel for the defendant put to the witness the following question:

Q. Do you desire to make an explanation in regard to these letters?

Plaintiff's counsel objected to the question as "incompetent, immaterial, and irrelevant. Upon the overruling of his objection to the above question, the plaintiffs base their second assignment of error. The error, as counsel insist in the brief, consisted in permitting the witness to explain his testimony in regard to the papers identified by him before they were offered in evidence. Had this been deemed important, plaintiff could have prevented it by offering the papers in evidence upon their identification by witness and before turning him over to the defendant for re-examination. But I do not think the point of time important. A court ought always to permit a witness to explain his testimony before leaving the stand—at what point of time before his final dismissal is a matter of discretion with the court.

Henry Hockenburger, a witness on the part of the defendant, testifies as follows:

Q. Do you know what lot and on what part of it the business of the Stump outfit was done on?

A.   It was the middle third of lot one, block 119.

Q.   Do you know the handwriting of Mr. Stump?

A.   No, sir.

Thereupon defendant offered in evidence a certain lease in writing purporting to have been executed between Daniel Condon and B. F. Stump, whereby the former leased to the latter the middle one-third of lot one, block one hundred and nineteen, with the building thereon except the cellar, from September 26, 1884, to September 26, 1885, for the consideration of $240, with stipulations, etc., to which the plaintiffs objected as immaterial and incompetent. The objection was overruled and the lease admitted in evidence and marked exhibit "D."

This paper, in the absence of proof of its execution, was incompetent evidence. It purports to have been witnessed by Gus G. Becher. Upon proof of his signature as the handwriting of the witness it would doubtless have been admissible, and would have been material as tending to show that the building in which the goods were kept and the business carried on was held in the name of B. F. Stump, and not in the name of Mrs. Stump. And in that view it probably had weight with the jury.

It was stated by counsel at the hearing that the family residence of the Stumps was also in the building on the said lot. Had this fact been proved at the trial it would not only have rendered the lease inadmissible as evidence, even if its execution had been proved, but would have destroyed its weight as evidence if admitted, it being the duty of the husband to furnish a residence for his wife; her use of it for other purposes might be merely incidental.

D. N. Meyers was sworn as a witness on the part of the defendant. He testified, among other things, that he was a traveling salesman for the firm of Lederer, Strause & Co. Upon his cross-examination, he having stated that he went to Ulysses in the month of January then last past and had a paper with him which he wanted Mrs. Stump to sign, plaintiffs' counsel put the following question to him:

Q.   Did you not at that time when you saw Mrs.
Stump in January last, when you had that paper with you,
offer to put up $500, $400 or $500 in one of the banks at
Ulysses, to guarantee that you and your house would return
all of the goods that had been taken by you and your house
on the attachment here, if she would come up and testify
in the county court.

To this question the counsel for defendant objected as
incompetent, immaterial, and irrelevant, and not proper
cross-examination.    Which objection was by the court sus-
tained and the question excluded.

Counsel in the brief says that "The error complained
of here is in not being allowed to show by the cross-exam-
ination of D. N. Meyers that he had tried and endeavored
to suborn and corrupt another witness," etc.    But, so far
as I can see, no answer which the witness could have made
to the question would have tended to prove that the witness
had tried or endeavored to suborn or corrupt Mrs. Stump.
Had he offered to put up money to induce her to stay away
from court or to testify falsely, or to a particular fact which
may have been false, it might have been different.    But
the answer contemplated by the question could only have
shown that he offered her an extravagant inducement to go
to court and testify—presumably, of course—to testify truly.
I fail to see how his answer to the question, either in the
affirmative or negative, would have tended to prove any
attempt on the part of the witness to bribe or corrupt
another witness.

The fifth assignment of error indirectly presents the
question whether the verdict is sustained by the evidence.
This point divides itself into two branches :   1. Does the
evidence sustain the finding as to the ownership of the
goods being in the defendant in the attachment proceedings?
2. Has the defendant sufficiently shown and proven his
right and authority to take the goods from the possession
of the plaintiffs?

Having come to the conclusion, upon consideration of the second branch of the point, that there must be a new trial, I do not deem it expedient to discuss the first branch.

Upon the second branch the papers introduced or offered in evidence by the defendant were the two orders of attachment issued out of the county court. There was evidence of the indebtedness of B. F. Stump, the defendant in the attachment proceedings, to the firm of Lederer, Strause & Co., but no evidence of his indebtedness to Roll, Thayer, Williams & Co., nor any evidence that either of said plaintiffs in such attachment proceedings made or filed the oath required by statute before the issuance of an order of attachment. As before stated, the goods when attached were in the possession of the plaintiffs in this action, who were strangers to the said attachment proceedings.

Drake, in his valuable work on attachment, states the law as follows : " When the officer attaches property found in the possession of the defendant he can always justify the levy by the production of the attachment writ, if the same is issued by a court or officer having lawful authority to issue it, and be in legal form. But when the property is found in the possession of a stranger claiming title, the mere production of the writ will not justify its seizure thereunder; the officer must go further and prove not only that the attachment defendant was indebted to the attachment plaintiff, but that the attachment was regularly issued." Drake on Att., 6 ed., § 185a. The above is adopted by the author almost literally from the opinion of the court in *Thornburgh v. Hand*, 7 Cal., 554, and is sustained by other authorities cited : *Noble v. Holmes*, 5 Hill (N. Y.), 194; *Van Etten v. Hurst*, 6 Id., 311; *Mathews v. Densmore*, 43 Mich., 461, as well as by authorities here cited by counsel for plaintiffs.

Some courts have made a distinction between attachments issued by courts of general and those of limited jurisdiction. It may be doubted, however, whether there is any

difference under a statute like ours, where the authority to issue an order of attachment by any court is limited to the special cases therein provided for, and in which the plaintiff shall conform to certain conditions precedent, amongst others that of filing an affidavit alleging certain facts therein indicated. It therefore. follows that in order to justify the seizure by virtue of an attachment of goods found in the possession of and the title to which is claimed by a stranger against whom no element of estoppel exists, the party so justifying must both allege and prove not only the issuing of the attachment but every material fact and condition necessary to the regularity of its issue. But if there is any difference in the application of the rule to the different classes of courts, there can be no doubt of its strict application to courts of such limited jurisdiction as that of county courts.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with law. The costs in the district court to abide the final result.

REVERSED AND REMANDED.

THE other judges concur.